IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HOWARD MARTIN HARMLESS,

Petitioner,

vs.

MICHAEL MARTEL, Warden, California
Health Care Facility, Stockton,[1]

Respondent.

No. 2:14-cv-00223-JKS

MEMORANDUM DECISION

Howard Martin Harmless, a state prisoner proceeding *pro se*, filed a Petition for a Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Harmless is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at the California

Health Care Facility, Stockton. Respondent has answered, and Harmless has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On June 4, 2010, Harmless was charged with one count of furnishing marijuana to a

minor under the age of 14 (Count 1); one count of furnishing marijuana to a minor over the age

of 14 (Count 2); and nine counts of lewd act upon a child under age 14 (Counts 3-11). As to

Counts 3-11, the information further alleged that each offense was a serious felony and that each

offense qualified for sentencing under the One Strike Law.[2] As to all counts, the information

---

[1]     Michael Martel, Warden, California Health Care Facility, Stockton, is substituted
for J. Lizarraga, former Warden, Mule Creek State Prison. FED. R. CIV. P. 25(c).

[2]     *See* CAL. PENAL CODE §§ 667.61. Since its adoption in 1994, California's One
Strike law has set forth an "alternative and harsher sentencing scheme for certain sex crimes."
*People v. Anderson*, 211 P.3d 584, 594 (Cal. 2009). "It mandates an indeterminate sentence of
15 or 25 years to life in prison when the jury has convicted the defendant of a specified felony
sex crime and has also found certain factual allegations to be true." *Id.* at 590.

further alleged that Harmless had five strike prior felony convictions. On direct appeal of his conviction, the California Court of Appeal laid out the following facts underlying the charges against Harmless and the evidence presented at trial:

*Offense Conduct*

In November of 2008, 13–year–old John Doe and his mother moved to Pollock Pines. They met [Harmless] who was a neighbor in the sparsely populated area. [Harmless] took an interest in Doe and spent time with him. Doe felt close to [Harmless] and told him about his troubled past.[FN1] When Doe fought with his mother, [Harmless] would take his side. [Harmless] paid Doe to do work for him. [Harmless] gave him money and bought him gifts, including cigarettes and cigars. [Harmless] also let Doe drive his car.

> FN1. Doe had been in trouble for sexual misconduct, assault and battery and petty theft. He had been in fights and had some gang involvement.

One weekend, Doe had a friend, D.T., over. [Harmless] suggested the boys stay with him overnight and they did. [Harmless] used a slang sexual term that meant he wanted to "make love" with them.[FN2] D.T. got very uncomfortable and backed up. [Harmless] then brought out marijuana and gave it to the boys. Both boys described [Harmless's] smoking pipe, a "one-hitter." The police later found the pipe in a bag of charcoal during a search of [Harmless's] property. According to D.T., after that weekend, Doe became distant, would not talk, and lost friends.

> FN2. We glean from the record that the actual term used was "feck," which the People's evidence at trial characterized as "British slang for the word fuck," but actually is of Irish origin.

About a week later, Doe was at [Harmless's] computer and [Harmless] told him to lie down on [Harmless's] bed. [Harmless] pulled down Doe's pants and licked his stomach. [Harmless] sucked Doe's penis and then gave Doe $50 and told him he could go home.

It happened again a few days later. When Doe tried to get up, [Harmless] bit his penis. [Harmless] continued to orally copulate Doe. [Harmless] licked his lips and told Doe he tasted like strawberry. Again, [Harmless] gave Doe $50. Doe's penis hurt and bled from the bite. Doe told his mother he had injured himself and she took him to a doctor where he got some cream.

The abuse continued. [Harmless] put his hand on Doe's penis five times. Doe stroked [Harmless's] penis twice. [Harmless] sometimes wanted Doe to make moaning noises and say certain things. Once, [Harmless] tried to "stick his thing in [Doe's] ass." It hurt and Doe bled. Doe told his mother that he was bleeding, but not the cause.

[Harmless] told Doe not to tell or bad things would happen. Doe would end up in foster care and his father would not take care of him. [Harmless] told Doe that no one would believe him. Doe, who gave his mother some of the money from [Harmless], did not tell anyone about the abuse because he thought it would split up the family.

*Uncharged Acts*

In the last incident, [Harmless] wanted Doe to orally copulate him. Doe began but started to gag and throw up. Doe tore up the $50 [Harmless] had given him. He told [Harmless], "I'm not doing this crap anymore." Doe finally told his mother.

Three men, in their late 20's at the time of trial, testified [Harmless] had molested them when they were children in Indiana. S.H. testified [Harmless] was a family friend who lived with them for awhile. While watching a movie, [Harmless] rubbed his stomach and tried to put his hands down S.H.'s pants. Over time, [Harmless] touched S.H. and told S.H. to touch him; [Harmless] put his mouth on S.H. and had S.H. orally copulate him. The abuse went on for over a year. [Harmless] told S.H. not to tell and reminded him of gifts [Harmless] had given him. S.H. told his mother about the abuse the weekend of his tenth birthday.

T.G. testified [Harmless] was a family friend. Beginning when T.G. was seven, [Harmless] sexually abused him. The abuse consisted of fondling, directing T.G. to touch [Harmless] sexually, oral copulation, and once [Harmless] inserted his fingers in T.G.'s anus. [Harmless] gave T.G. gifts and told him it was their secret. The abuse ended when other children came forward.

[Harmless] was also a friend of S.D.'s family; he was in a band with S.D.'s father. Starting when S.D. was five, [Harmless] would touch S.D.'s penis and put it in his mouth and coax S.D. to do the same to him. [Harmless] told S.D. that if he told, his parents would be angry and S.D. would not see them again.

[Harmless] admitted he had molested these three boys, as well as his own son and others. In 1991, he pled guilty and served seven and a half years in prison. However, [Harmless] denied he had ever improperly touched Doe and claimed he was rehabilitated through counseling. He claimed that once Doe found out [Harmless] was a registered sex offender, Doe blackmailed [Harmless] to get what he wanted by threatening to tell his mother that [Harmless] had touched him. Doe told [Harmless], "I've got your life in the palm of my hand."

A business associate, [Harmless's] daughter, and his former girlfriend testified as character witnesses for [Harmless]. They testified [Harmless] had "outstanding morals and ethics," was "completely honest and trustworthy," and was a "man of honor."

*People v. Harmless*, No. C066882, 2012 WL 5704937, at *1-2 (Cal. Ct. App. Nov. 16, 2012).

At the conclusion of trial, the jury found Harmless guilty as charged. Harmless waived

his right to a jury trial on the priors and admitted all of prior convictions in the information. The

trial court sentenced Harmless to an aggregate term of 725 years to life imprisonment. The trial

court also imposed restitution and various fines and fees, including $279,000 in restitution to Doe for prospective non-economic damages.

Through counsel, Harmless appealed his conviction, arguing that: 1) the trial court erred in admitting evidence of prior sex offenses as propensity evidence; 2) the trial court abused its discretion by not granting Harmless's motion for a new trial; 3) insufficient evidence was presented at trial to sustain his convictions; and 4) the trial court erred in declining to dismiss Harmless's strike prior pursuant to *People v. Superior Court (Romero)*, 917 P.2d 628, 632 (Cal. 1996)[3] and by imposing a cruel and unusual sentence. The California Court of Appeal unanimously affirmed the judgment against Harmless in a reasoned, unpublished opinion issued on November 16, 2012. *Harmless*, 2012 WL 5704937, at *5. Harmless petitioned for review in the California Supreme Court, which was summarily denied on January 23, 2013.

Harmless then filed a *pro se* petition for habeas relief in the California Supreme Court. In that petition, Harmless claimed that: 1) trial counsel rendered ineffective assistance by failing to a) acquire phone records from the prosecution witnesses, b) call witnesses to show Doe's "true character," c) hire a forensic expert, d) object to prosecutorial misconduct at trial, and e) object to perjured testimony; 2) the prosecution committed misconduct by tampering with the jury, knowingly eliciting perjured testimony, and using inadmissible hearsay evidence; 3) appellate counsel was ineffective for failing to raise on direct appeal the ineffective assistance of trial

---

[3]     Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of enhanced sentencing under state law, *see* CAL. PENAL CODE §§ 667(a)(1) & (b)-(I), 1170.12(a)-(d); a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case.

counsel and prosecutorial misconduct; and 4) the trial court gave the jury an ambiguous instruction. The Supreme Court denied the petition without comment on January 13, 2016.

While his state habeas petition was pending, Harmless timely filed a *pro se* Petition for a Writ of Habeas Corpus in this Court dated January 21, 2014. Docket No. 1; *see* 28 U.S.C. § 2244(d)(1),(2). Harmless simultaneously moved to stay and abey the federal proceedings to allow him to exhaust his claims in state court. Docket No. 5. This Court, through a previously-assigned magistrate judge granted the request and stayed the proceedings. Docket No. 9. After the California Supreme Court denied Harmless's state habeas petition, Harmless moved to lift the stay and filed a First Amended Petition for Writ of Habeas Corpus. Docket No. 20 ("Petition"). The Court lifted the stay and ordered a response. Docket No. 25. Briefing is now complete, and the case is before the undersigned judge for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Harmless argues that the trial court erred by: 1) admitting his prior sex offenses as propensity evidence, and 2) denying his *Romero* motion and imposing a cruel and unusual sentence. In Ground 3 through 11, Harmless contends that trial counsel rendered ineffective assistance by failing to: 3) acquire phone records; 4) call witnesses to show Doe's character; 5) investigate and present expert testimony on yeast infections; 6) investigate and present an expert on urology; 7) investigate and call a fingerprint expert; 8) investigate Harmless's computer; 9) object to prosecutorial misconduct; 10) object to perjured testimony; and 11) object to hearsay evidence. In Ground 12, Harmless raises an ineffective assistance of trial counsel claim based on counsel's "multiple errors." In Ground 13, Harmless claims that the prosecutor committed misconduct by a) making an improper remark to

the bailiff, b) knowingly eliciting perjured testimony, and c) using inadmissible hearsay. In Ground 14, Harmless argues that appellate counsel was ineffective for failing to raise Grounds 2-13 on direct appeal. Finally, Harmless contends in Ground 15 that the trial court violated his rights to due process when it gave an ambiguous jury instruction.

### III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the

relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

# IV. DISCUSSION

1.      <u>Evidentiary Error</u> (Ground 1)

Harmless first argues that the trial court erred when it admitted his prior sex offenses as propensity evidence under California Evidence Code § 1108.  Under § 1108, the prosecution may prove a defendant's propensity to commit sex offenses by offering evidence that he has committed other sex crimes.  It is an exception to the general rule, reflected in § 1101, that propensity evidence is not admissible.  *See* Cal. Evid. Code §§ 1101(a), 1108(a).  The relevant portion of § 1108 provides: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." Section 1108 is analogous to Federal Rule of Evidence 413, which provides that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault."  Fed. R. Evid. 413(a).

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code section 352, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "A district court is afforded wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."  *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).  California employs a similar rule.  *See People v.*

*Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

Harmless argues, as he did on direct appeal, that the trial court erred in its balancing under Evidence Code § 352 because the inflammatory and prejudicial nature of the evidence far outweighed its probative value given the remoteness and dissimilarity of the other conduct. But to the extent Harmless argues that the trial court erred under state law, he cannot prevail on such claim because "[i]ncorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected." *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987). So, even if the trial court erred in its application of §§ 352 and 1108, such error is not a ground for federal habeas relief. *See Estelle*, 502 U.S. at 67-68.

Moreover, the Ninth Circuit has repeatedly barred federal habeas petitioners from challenging the constitutionality of prior sexual misconduct evidence admitted to show propensity pursuant to California Evidence Code § 1108. *See, e.g., Greel v. Martel*, 472 F. App'x 503, 504 (9th Cir. 2012) ("Ninth Circuit precedent 'squarely forecloses [the] argument' that admission of evidence of sexual misconduct to show propensity violates due process.") (quoting *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008)); *Sanches v. Hedgpeth*, 381 F. App'x 710, 711 (9th Cir. 2010) ("[T]he Supreme Court has never held that the admission of prior sexual misconduct to lend credence to a victim's claims to be unconstitutional."); *Mejia*, 534 F.3d at 1046 (on AEDPA review, upholding admission of evidence of prior uncharged sexual offenses in support of rape charges). In so holding, the Ninth Circuit has cited the United States Supreme Court's express refusal to decide the issue. *See Estelle*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due

Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").

In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the state courts' rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Harmless's challenge to the admission must fail.

In any event, the Court of Appeal's § 352 analysis is well supported by the record. The appellate court reasonably determined that the probative value of the evidence was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice. As that court explained:

> The prior offenses were remote, occurring in or before 1991. "In theory, a substantial gap between the prior offenses and the charged offenses means that it is less likely that the defendant had the propensity to commit the charged offenses. However, . . . significant similarities between the prior and the charged offenses may 'balance[ ] out the remoteness.' [Citation.] Put differently, if the prior offenses are very similar in nature to the charged offenses, the prior offenses have greater probative value in proving propensity to commit the charged offenses." (*People v. Branch* (2001) 91 Cal. App. 4th 274, 285.)
>
> [Harmless] focuses on the differences between the prior and current offenses—the age difference of the victims and that he had known the families of his prior victims for a long time, but he had just met Doe and his mother. While there may be some differences, the similarities are striking. In all cases, [Harmless] preyed upon a boy whose family

trusted [Harmless]. Doe's mother described [Harmless] as grandfatherly and thought he was an angel. [Harmless] gave his victims gifts and told them not to tell. [Harmless] told both Doe and S.D. that if they told anyone they would lose contact with their parents. The progression of abuse and the actual conduct in all cases was the same: it began with [Harmless's] touching his victim and directing his victims to touch him, then continued to oral copulation, ultimately leading in some cases to sodomy or anal penetration.

Given the similarities of the charged and uncharged crimes, it was not an abuse of discretion to admit evidence of [Harmless's] prior acts of molestation even though they occurred almost 20 years before. (*See People v. Soto* (1998) 64 Cal. App. 4th 966, 977-978, 992 [passage of 20 to 30 years does not automatically render prior incidents prejudicial when uncharged and charged sexual offenses are similar].)

*Harmless*, 2012 WL 5704937, at *3-4.

For these reasons, the Court of Appeal's rejection of Harmless's claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Harmless is thus not entitled to relief on this claim.

2.    Sentencing Claims (Ground 2)

Harmless next challenges the legality and appropriateness of his sentence. Specifically, Harmless contends that: 1) the trial court abused its discretion by denying his *Romero* motion to dismiss his strike prior; and 2) his sentence of 725 years to life imprisonment constitutes cruel and unusual punishment.

The thrust of his *Romero* claim is that the trial court erroneously failed to exercise its discretion to strike his prior serious felony convictions when imposing his sentence. Such claim, however, presents only a state law sentencing error that is not cognizable on federal habeas review. *See Souch v. Schiavo*, 289 F.3d 616 (9th Cir. 2002) (claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and thus was not cognizable in a proceeding pursuant to 28 U.S.C. § 2254); *see also Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68. Although the Ninth Circuit has

suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[4]  Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not.  *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law."" (quoting § 2254(d)(1))).

Even assuming that Harmless is correct that the trial court misapplied California law when denying his motion, absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not warrant habeas relief.  *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see also Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (declining to examine state court's determination that habeas petitioner's prior conviction was for a "serious felony" under state sentencing regime).  Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this Court therefore must defer to the California courts' application of the state's prior

---

[4]        At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error.  *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000).  This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard.  *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc).  The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

strikes laws unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989). Harmless does not allege that the state court's application of the One Strike law was either untenable or done to avoid federal review of his sentence. Nor has he shown that the trial court's *Romero* decision was arbitrary, capricious, or fundamentally unfair in violation of federal due process. *See Christian*, 41 F.3d at 469. As the Court of Appeal explained:

> Far from being outside the spirit of the three strikes law, [Harmless] is exactly the type of recidivist targeted by the law. [Harmless] was convicted in 1991 on five counts of child molestation and admitted he molested others for which he was not charged, including his own son. After a significant period in prison and extensive counseling, he resumed the same criminal activity. In declining to strike a defendant's priors, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) That is not the case here.

*Harmless*, 2012 WL 5704937, at *5.

The Court of Appeal's determination was both reasonable and fully supported by the record, and forecloses any relief here.

Nor can Harmless prevail on his cruel and unusual punishment claim. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, proscribes the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). The Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted). In determining whether to infer gross disproportionality, a federal court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and

his criminal history, a process similar to the three-pronged approach employed by California state courts.  *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

Here, the California Supreme Court upheld Harmless's sentence of 725 years to life imprisonment where he was convicted of multiple counts of child molestation and was also a repeat offender.  Given the length of Harmless's term, the Court recognizes that it is the functional equivalent of a life without parole ("LWOP") sentence, and will consider it in accordance with case law evaluating LWOP sentences.  *See Moore v. Biter*, 715 F.3d 1184, 1191-92 (9th Cir. 2013).  Although the United States Supreme Court has condemned LWOP sentences for juvenile offenders, *see Graham v. Florida*, 560 U.S. 48, 75 (2010) (LWOP sentence is unconstitutional for juveniles who committed non-homicide offenses); *Miller v. Alabama*, 567 U.S. 460, 476 (2012) (mandatory LWOP sentence unconstitutional where sentencing court has no discretion to consider the defendant's youth or other "mitigating qualities"), Harmless was well into adulthood when he committed these crimes and therefore does not benefit from this authority.  And although it may raise a theoretical question as to whether a sentence that far exceeds a defendant's life expectancy is appropriate or necessary, *see People v. Deloza*, 957 P.2d 945 (Cal. 1998) (Mosk, J., concurring) (decrying multi-century sentences as oblivious to life expectancy tables), the U.S. Supreme Court has upheld the constitutionality of lengthy sentences imposed pursuant to the Three Strikes law, *Lockyer*, 538 U.S. at 77 (50 years to life imprisonment for petty theft), and has not clearly-established that LWOP sentences are unconstitutional for adult offenders who commit violent crimes.

Nor can Harmless demonstrate that his is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime

committed.  *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to

life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77.

The California Supreme Court's affirmance of Harmless's sentence was therefore not "contrary

to, or . . . an unreasonable application of," the gross disproportionality principle, the contours of

which are unclear.  *Lockyer*, 538 U.S. at 72-73.  As the Ninth Circuit Court of Appeals has

observed:

> "[T]he impact of [child molestation] on the lives of [its] victims is extraordinarily
> severe."  *Cacoperdo v. Demosthenes*, 37 F.3d 504, 508 (9th Cir. 1994); *see Stogner v.
> California*, 539 U.S. 607, 651, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003) (Kennedy, J.,
> dissenting) ("When a child molester commits his offense, he is well aware the harm will
> plague the victim for a lifetime.").  Indeed, while "psychological or physical harm is
> necessary to constitute 'abuse[,]'" *United States v. Baza–Martinez*, 464 F.3d 1010, 1017
> (9th Cir. 2006), "[t]he use of young children [by adults] for the gratification of sexual
> desires constitutes an abuse. . . .  It constitutes maltreatment, no matter its form."  *United
> States v. Baron–Medina*, 187 F.3d 1144, 1147 (9th Cir. 1999); *see, e.g.*, *United States v.
> Valencia–Barragan*, 600 F.3d 1132, 1136 (9th Cir. 2010).  "[W]e and our sister circuits
> have [therefore] consistently held that sexual offenses [by older adults] against younger
> children constitute 'crimes of violence.'"  *United States v. Medina–Villa*, 567 F.3d 507,
> 515 (9th Cir. 2009).

*Norris*, 622 F.3d at 1294.

Although Harmless's sentence is admittedly harsh, California's decision to subject him to

an enhanced sentence as a recidivist under its One Strike Law targeting repeat sexual offenders

"reflect[ed] a rational legislative judgment, entitled to deference, that offenders who have

committed serious or violent felonies and who continue to commit felonies must be

incapacitated."  *Ewing*, 538 U.S. at 30.  Harmless is thus not entitled to relief on this claim

either.

3.     <u>Freestanding Ineffective Assistance of Trial Counsel Claims</u> (Grounds 3-8, 11)

Harmless additionally avers that trial counsel rendered ineffective assistance for a variety of reasons. To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v. United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Harmless must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart,* 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Harmless fails to satisfy these heavy burdens with respect to any of his challenges. He first faults counsel for failing to "acquire the phone records of the primary prosecution witnesses to prove collusion among the witnesses even before the sheriff was called." But the two primary witnesses, John Doe and D.T., were best friends who would presumably have reason to talk with each other that had nothing to do with the case. It is not reasonably likely that phone records showing that Doe and D.T. talked with each other would be beneficial to Harmless's case or lead to a better outcome.

The same rings true with respect to Harmless's claim that counsel should have called witnesses to show John Doe's "normal bad behavior and lying." The record reflects that counsel made a reasonable tactical decision to vigorously cross-examine John Doe and have him admit negative aspects of his character rather than call witnesses to smear a minor's character. The record further reflects that counsel had success with that tactic, as Doe admitted during cross-examination that he engaged in physical fights with his mother, was expelled from two schools, caused substantial monetary loss by repeatedly impersonating his school principal, dropped his pants in front of girls on the school bus, assaulted his mother in violation of his juvenile

probation, threw a rock at a school window, and participated in fights as a member of the Sureno gang. Harmless fails to show that a different approach–using outside witnesses to demonstrate Doe's character–would have led to a better outcome.

Harmless further complains that counsel failed to retain and call at trial certain experts, namely, a yeast infection expert, a urologist, a fingerprint expert, and a computer expert. Harmless contends that the experts were necessary to show that Doe caught his yeast infection from a girl with whom he was sexually active, to opine that Doe's testimony that Harmless sodomized him with a flaccid penis was unlikely to be true, to impeach Doe's testimony that he had never seen a folder of gang artwork printouts, and to refute Doe's testimony that Harmless's computer had a photo of Doe's buttock.[5] The Ninth Circuit remains sensitive to the issue of retaining and consulting with defense experts. *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063, 1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d 944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011). The cases finding ineffective assistance based on defense counsel's failure to consult with an expert or offer expert testimony appear to involve situations where the prospective defense expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony offered by the Government; 3) significantly weaken adverse Government expert testimony; and 4) aid in preparing defense counsel's cross-examination of the adverse Government expert

_____

[5]     Notably, the investigator's report, which was read in court, stated that no illegal files or information was found on the computer

testimony.  Here, however, Harmless provides no support for his contention that such experts would have uncovered useful evidence or testified on his behalf.  *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) (speculation that an expert would testify on petitioner's behalf is insufficient to establish *Strickland* prejudice); *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

Finally, Harmless faults counsel for failing to object to inadmissible hearsay evidence. But the alleged hearsay Harmless identifies was his own testimony on cross-examination admitting that he had previously molested four boys and smoked pot with them.  Hearsay is defined as "a statement that: 1) the declarant does not make while testifying at the current trial or hearing; and 2) a party offers in evidence to prove the truth of the matter asserted in the statement."  FED. R. EVID. 801(c).  Because Harmless's testimony at trial does not constitute hearsay, and as discussed with respect to Ground 1, *supra*, the prior crimes evidence was admissible, Harmless asserts no valid basis for counsel to object to the testimony.  Harmless is therefore not entitled to relief on any of these ineffective assistance of counsel claims.

4.      Prosecutorial Misconduct/Ineffective Assistance of Counsel (Grounds 9-10, 13)

Harmless next asserts that the prosecutor committed misconduct by making an inappropriate comment to the bailiff and by eliciting perjured testimony.  He relatedly faults counsel for failing to object to the prosecutor's misconduct.

Federal habeas review of prosecutorial misconduct claims is limited to the narrow issue of whether the alleged misconduct violated due process.  *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  To prevail on such a claim, a petitioner must show that the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due

process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Moreover, "[o]n habeas review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht*, 507 U.S. at 637-38 (1993)).

Under clearly established federal law, a prosecutor's incorrect and improper comments will be held to violate the Constitution only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parker v. Matthews*, 132 S. Ct. 2148, 2153 (2012) (per curiam) (quoting *Darden v. Wainright*, 477 U.S. 168, 181 (1986)); *see Sassounian v. Roe*, 230 F.3d 1097, 1106 (9th Cir. 2000). In determining whether the prosecutor's remarks rendered a trial fundamentally unfair, the remarks must be analyzed in the context of the entire proceeding. *Boyde*, 494 U.S. at 385; *Darden*, 477 U.S. at 179-182. Even when prosecutorial misconduct rises to the level of a due process violation, such misconduct provides grounds for habeas relief only if that misconduct is prejudicial under the harmless error test articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). *Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).

Harmless first contends that the prosecutor committed misconduct when the prosecutor remarked to the bailiff during an in-chambers scheduling conference, "Tell [the jury] a lot of big murder cases are coming up; don't ask for continuances. That always works. Take your six-day trial." According to Harmless, "[t]he reason this was said was to indirectly impress upon the jury an unreasonable need to expedite the deliberation time, thereby creating an unfair trial." Upon independent review of the challenged comment in light of these guidelines, the Court concludes that the state courts' rejection of Harmless's challenge was neither contrary to, or an

unreasonable application of, clearly-established federal law. A reasonable interpretation reflects that the prosecutor made the comment in jest, and the bailiff would not have relayed the remark to the jury. For the same reason, Harmless cannot show that counsel was ineffective for failing to object to the joke, or that he was prejudiced by counsel's failure to do so.

Harmless additionally contends that the prosecutor elicited perjury from Doe that Harmless was circumcised, although Harmless had previously told an investigator that Harmless was uncircumcised. "[T]he [Supreme] Court has consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnotes omitted). The essential elements of such successful claim are that (1) the testimony is false or perjured, (2) the prosecutor knew that the testimony was false or perjured, and (3) the false testimony was material. *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc); *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Murtishaw v. Woodford*, 255 F.3d 926, 959 (9th Cir. 2001).

Although the prosecutor has a duty to refrain from knowingly presenting perjured testimony, *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002), the record does not support Harmless's contention that the prosecution knowingly introduced perjured testimony. Harmless bases this prosecutorial misconduct claim only an inconsistency in testimony given by Doe. But as Doe testified on cross-examination, when he had been questioned by authorities, he had referred to Harmless as uncircumcised because he did not understand the meaning of the word. Thus, the assertedly-conflicting evidence on which Harmless's prosecutorial misconduct claim is predicated is insufficient to establish a *Napue* violation, and his claim must fail. For the

same reasons, Harmless cannot prevail on his ineffective assistance claim based on counsel's failure to object. He is thus not entitled to relief on any argument advanced in support of these grounds.

5.   <u>Instructional Error</u> (Ground 15)

Harmless further argues that the trial court erred when it instructed the jury on the reasonable doubt standard. At the outset of trial, the court instructed the jury, "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." The trial court further instructed the jury, "You can't eliminate all doubt. There is always some doubt." According to Harmless, the instructions prejudiced him by "g[iving] the jury permission to have doubt about everything, thus relieving the State of its burden to prove every element of the defense."

Because jury instructions in state trial are typically matters of state law, federal courts are bound by a state appellate court's determination that a jury instruction was not warranted under state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (noting that the Supreme Court has repeatedly held that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Williams v. Calderon*, 52 F.3d 1465, 1480-81 (9th Cir. 1995). An instructional error, therefore, "does not alone raise a ground cognizable in a federal habeas proceeding." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1986) (citation omitted).

A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the

consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380

(1990). The question is whether the instruction, when read in the context of the jury charges as a

whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471

U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary

that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000);

*Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the

law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the

subject in depth).

It is well-established that not only must the challenged instruction be erroneous but it

must violate some constitutional right, and it may not be judged in artificial isolation but must be

considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at

72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is

whether there is a reasonable likelihood that the jury applied the challenged instruction in a way

that violates the constitution and that the category of infractions that violate "fundamental

fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in

the Bill of Rights, the Due Process clause has limited operation." *Id.*

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove

every element charged in a criminal offense beyond a reasonable doubt. *See In re Winship*, 397

U.S. 358, 364 (1970). "[T]he Constitution does not require that any particular form of words be

used in advising the jury of the government's burden of proof. Rather, taken as a whole, the

instructions must correctly convey the concept of reasonable doubt to the jury." *Victor v.*

*Nebraska*, 511 U.S. 1, 5 (1994). A federal habeas court "must determine whether there was a

reasonable likelihood that the jury understood the instruction to allow a conviction predicated on proof that was insufficient to meet the requirements of due process." *Lisenbee v. Henry*, 166 F.3d 997, 999 (9th Cir. 1999) (*citing Ramirez v. Hatcher*, 136 F.3d 1209, 1213 (9th Cir. 1998)).

The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

In this case, Harmless raised his instructional error claim in a habeas petition to the California Supreme Court, which summarily denied it. The California appellate court's rejection of this instructional error claim was not objectively unreasonable. This is particularly true given that the U.S. Supreme Court's guidance on the language illustrating the reasonable doubt standard is a general, rather than specific, rule which, as discussed above, allows the state courts more leeway in reaching case-specific determinations. *See Yarborough*, 541 U.S. at 664. Harmless is thus not entitled to relief on his instructional error claim.

6.      <u>Other Ineffective Assistance Claims</u> (Ground 12, 14)

Finally, Harmless claims that he is entitled to habeas relief because trial counsel committed "multiple errors," as addressed in Grounds 3-8 and 11, *supra*, and that appellate counsel rendered ineffective assistance by failing to raise the errors on appeal. But as thoroughly discussed above, Harmless fails to show that trial counsel rendered ineffective assistance.

Accordingly, Harmless cannot demonstrate that trial counsel committed multiple errors or that appellate counsel may be faulted for failing to raise meritless issues. *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

V. CONCLUSION AND ORDER

Harmless is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 28, 2020.

    /s/James K. Singleton, Jr.    <br>JAMES K. SINGLETON, JR.<br>Senior United States District Judge